UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                              )
                                    )
TD MANUFACTURING, LLC               )
EIN: 47-1730944                     )        Case No. 17-14243-MER
                                    )
        Debtor.                     )

## MOTION FOR CONDITIONAL APPROVAL OF DISCLOSURE
## STATEMENT AND TO SET RELATED DATES

The Debtor, by and through its attorneys, Buechler & Garber, LLC, hereby moves the Court pursuant to 11 U.S.C. § 105(d) to grant conditional approval of the Debtor's Disclosure Statement and to set hearing dates with respect to the Joint Plan of Reorganization and as grounds therefore respectfully states as follows:

1.      The Debtor filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on May 9, 2017 and remains a debtor in possession.

2.      The Debtor is a small business Debtor and this case is proceeding as a small business case under the Bankruptcy Code.

3.      The Debtor has 300 days within which to file its Plan of Reorganization. The 300th day from the petition date is March 5, 2017.

4.      The Debtor's proposed Plan of Reorganization dated January 17, 2018 is attached hereto as Exhibit 1. The proposed accompanying Disclosure Statement is attached hereto as Exhibit 2.

5.      The Debtor is seeking conditional approval of the Disclosure Statement pursuant to 11 U.S.C. § 1125(f)(3)(A) and Local Bankruptcy Rule 3017.1.1.

6.      In conjunction with the condition approval, the following deadlines must be satisfied to comply with 1121 and 1129, the Debtor sets forth the following deadlines:

      a.      Conditional approval of the Disclosure Statement must occur by March 1, 2018 so the Debtor can file its proposed Plan of Reorganization by March 2, 2018.

      b.      The Debtor must file its proposed Plan of Reorganization by March 5, 2018.

      c.      Assuming the Plan of Reorganization is filed on March 2, 2018, since a confirmation hearing must be held within 45 days (11 U.S.C. § 1129(e)), which period runs on

April 16, 2018, notice of the Plan of Reorganization, Disclosure Statement and Ballot must be served pursuant to Fed. R. Bankr. P. 2002(b) 28 days prior to the confirmation hearing, or March 19, 2018. 11 U.S.C. § 1125(f)(3)(B) provides a conditionally approved Disclosure Statement must be served 25 days prior to the confirmation hearing, which date is March 22, 2018.

d. The deadline for parties to file: (i) written objections to the Disclosure Statement; (ii) written acceptances or rejections of the Plan; (iii) written objections to the Plan of Reorganization should be 7 days prior to the confirmation hearing, which if set for April 16, 2018, the objection deadline would be April 9, 2018.

e. The final hearing on the Disclosure Statement and the Plan confirmation hearing would need to be conducted on April 16, 2018.

7. Given the timing of the filing of this Motion, to assist the Court, the Debtor proposes the following deadlines:

a. Assuming the Plan of Reorganization is filed on January 30, 2018, since a confirmation hearing must be held within 45 days (11 U.S.C. § 1129(e)), which period runs on March 16, 2018, notice of the Plan of Reorganization, Disclosure Statement and Ballot must be served pursuant to Fed. R. Bankr. P. 2002(b) 28 days prior to the confirmation hearing, or February 16, 2018. 11 U.S.C. § 1125(f)(3)(B) provides a conditionally approved Disclosure Statement must be served 25 days prior to the confirmation hearing, which date is January 22, 2018.

b. The deadline for parties to file: (i) written objections to the Disclosure Statement; (ii) written acceptances or rejections of the Plan; (iii) written objections to the Plan of Reorganization should be 7 days prior to the confirmation hearing, which if set for February 16, 2018, the objection deadline would be February 22, 2018.

c. The final hearing on the Disclosure Statement and the Plan confirmation hearing would need to be conducted on February 23, 2017.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, a proposed form is attached hereto, which comports with L.B. Form 3017.1-1.1: (a) conditionally approving the Debtor's proposed Disclosure Statement; (b) set a hearing on confirmation of the Debtor's Plan of

Reorganization; (c) set other relevant dates; and (d) for such further and additional relief as to the Court may appear proper.

Dated: January 18, 2018            Respectfully submitted,

By:    /s/ Aaron A. Garber
        Aaron A. Garber, #36099
        **BUECHLER & GARBER, LLC**
        999 18th Street, Suite 1230S
        Denver, CO 80202
        Telephone: (720) 381-0045
        Telecopy: (720) 381-0382
        E-mail:aaron@bandglawoffice.com

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TD MANUFACTERING, LLC | ) | |
| EIN: 47-1730944 | ) | Case No. 17-14243-MER |
| | ) | |
| Debtor. | ) | |

## PLAN OF REORGANIZATION DATED JANUARY 17, 2018

TD Manufacturing, LLC ("TD" or the "Debtor"), Debtor and Debtor-in-Possession, hereby proposes, pursuant to Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization (the "Plan").

### ARTICLE I

### INTRODUCTION

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on May 9, 2017 (the "Petition Date"). The Debtor remains a Debtor-in-Possession. The Debtor is a metal fabrication and powder coating business operating in the Greeley area. This Plan provides for the reorganization of the Debtor under chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor shall restructure its debts and obligations and continue to operate in the ordinary course of business. A more complete history of the Debtor, its operations, an explanation of this Plan, and a description of the Debtor's financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

**WARNING: IF YOU ARE A CREDITOR YOUR RIGHTS MAY BE IMPAIRED BY THIS PLAN. A SEPARATE ORDER HAS ENTERED SETTING FORTH THE DEADLINE TO OBJECT AND TO VOTE TO ACCEPT OR REJECT THE PLAN THAT IS BEING SERVED UPON YOU.**

# ARTICLE II

## DEFINITIONS

2.01 - <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estates and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; (d) certain post-petition tax claims; and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 503(b) of the Bankruptcy Code.

2.02 - <u>Allowed Claim</u> shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in the cases or scheduled in the lists of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

2.03 - <u>Allowed Secured Claim</u> shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.04 - <u>Avoidance Actions</u> means Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to

equitable subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.05 - Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.06 - Class shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.07- Class 1-5 Claims and Interests shall mean the Allowed Claims and Interests so classified in Article III.

2.08 - Code shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.09 - Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - Court shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 - Debtor shall mean the Debtor who is proposing this Chapter 11 Plan.

2.12 - Disclosure Statement shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

2.13 - Disputed Claim means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with the cases, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

2.14 - Effective Date of the Plan shall mean the date on which the Order for Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

2.15 - <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

2.16 – <u>Gross Revenue</u> shall mean gross collections actually received by TD, during the term of the Plan, derived from the operations of TD, less all taxes collected over the same period.

2.17 - <u>Interest</u> shall mean any member or shareholder interest or any other instrument evidencing any ownership interest in the Debtor and any option, warrant or right of any nature, contractual or otherwise, to acquire a member or other ownership interest in the Debtor.

2.18 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.19 – <u>Petition Date</u> shall mean the date on which the Voluntary Petition was filed by the Debtor on May 9, 2017.

2.20 - <u>Plan</u> shall mean this Joint Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

2.21 - <u>Priority Claim</u> means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

2.22 - <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

2.23 - <u>Professional Fees</u> means the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a professional.

2.24 - <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.25 - <u>Tax Claim</u> means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.26 - <u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 23 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

2.27 –<u>Unsecured Creditor Account</u> shall mean that segregated account referenced and established pursuant to paragraphs 4.2 and 9.2 of this Plan, into which the Debtor will deposit ___% of Gross Revenues during the term of the Plan for distribution to all Allowed Administrative Claims until paid in full and then to Class 4 general unsecured creditors over the five year term of the Plan. The account will be maintained at a federally insured banking institution and the account shall be maintained within the insurance limit of the institution.

2.28 - <u>Other Definitions</u>. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE III

## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

<u>Class 1</u> - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 2 - The Allowed Secured Claim held by TBK Bank.

Class 3 – The Allowed Secured Claim held by Colorado Lending Source, Ltd.

Class 4 – The Allowed Claims held by unsecured creditors.

Class 5 - The Interest of TD.

## ARTICLE IV

## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

4.1 – The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or if agreed to by the claim holder, in full from the Unsecured Creditor Account established pursuant to paragraph 4.2 of this Article 4. Section 507(a)(2) Administrative Claims that are Allowed by the Court after the Effective Date of the Plan shall be paid upon Allowance.

4.2 – Each month to Allowed Administrative Claims are paid in full and then for five years thereafter following the Effective Date of the Plan, TD will deposit ___% of Gross Revenues during the term of the Plan into the Unsecured Creditor Account. Every time three deposits have been made into the account, the balance of the account will be distributed to the holders of Allowed Administrative Claims on a Pro Rata basis until such time as all holders of Allowed Administrative Claims have been paid in full.

4.3 – The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid in monthly payments on an amortized basis over a period that does not exceed five years from the Petition Date with interest at the appropriate rate set by applicable statute or as otherwise agreed to by the Debtor and the taxing authority.

4.6 - The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until each respective case is closed, converted, or

dismissed. All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

## ARTICLE V

## SPECIFICATION AND TREATMENT OF CLASS 1 CLAIMS

5.1 - Allowed Class 1 Priority Claims shall be paid in full on the Effective Date. The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code.

## ARTICLE VI

## SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

6.1 – **TBK Bank.** The Class 2 Secured Claim shall be treated as set forth herein. The Class 2 Secured Claim is impaired by this Plan. The Class 2 Secured Claim will be treated under this Plan as follows:

a. The principal amount of the Class 2 claim will be allowed in an amount of $\_\_\_,000, or if the Class 2 claimant timely objects to such amount in writing and serves a copy of such objection on the Debtor, an amount determined by the Court at the confirmation hearing, or an amount as agreed upon by TD and the Class 2 claimant on or before the Confirmation Date. Pursuant to 11 U.S.C. § 506, the claim is secured up to the value of the collateral for the claim and unsecured for the balance.

b. The Class 2 Claim will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2 claimant timely objects to such rate in writing and serves a copy of such objection on the Debtor, such rate will be determined by the Court at the confirmation hearing as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by TD and the Class 2 claimant.

c. The Class 2 Claim shall be paid in month equal installments amortized over \_\_\_ years.

The Class 2 claimant will retain all liens that secure its Claim as of the Petition Date, subject to payment modification and principal amount of the loan as set forth herein.

d. All other provisions of the loan documents underlying the Class 2 Allowed Secured Claim are unmodified by this Plan.

6.2 – **Colorado Lending Source, Ltd.** The Class 3 Secured Claim shall be treated as set forth herein. The Class 3 Secured Claim is impaired by this Plan. The Class 3 Secured Claim will be treated under this Plan as follows:

a. The property securing the Class 3 claim shall be valued at $_____. The lien of Colorado Lending Source, Ltd. shall be released and the Class 3 Claim shall be treated as a Class 4 general unsecured claim pursuant to 11 U.S.C. § 506.

b. To the extent Colorado Lending Source, Ltd. objects to its treatment under subparagraph a above, the principal amount of the Class 3 claim will be allowed in an amount determined by the Court at the confirmation hearing, or an amount as agreed upon by the Debtor and the Class 3 claimant on or before the Confirmation Date. Pursuant to 11 U.S.C. § 506, the claim is secured up to the value of the collateral for the claim and unsecured for the balance.

c. If the Class 3 claim is allowed as a secured claim, shall be treated as follows:

i. The Class 3 Claim will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 3 claimant timely objects to such rate in writing and serves a copy of such objection on the Debtor, such rate will be determined by the Court at the confirmation hearing as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by TD and the Class 3 claimant.

ii. The Class 3 Claim will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 3 claimant timely objects to such rate in writing and serves a copy of such objection on the Debtor, such rate will be determined by the Court at the confirmation hearing as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by TD and the Class 3 claimant.

iii.  The Class 3 Claim shall be paid in month equal installments amortized over ___ years.

iv.  The Class 3 claimant will retain all liens that secure its Claim as of the Petition Date, subject to payment modification and principal amount of the loan as set forth herein.

v.  All other provisions of the loan documents underlying the Class 3 Allowed Secured Claim are unmodified by this Plan.3 Claim shall be paid in month equal installments amortized over ___ years.

vi.  All other provisions of the loan documents underlying the Class 2 Allowed Secured Claim are unmodified by this Plan.

**ARTICLE VII**

**SPECIFICATION AND TREATMENT OF**

**UNSECURED CREDITOR CLAIMS**

7.1 - Class 4 consists of those unsecured creditors of TD who hold Allowed Claims.  Class 4 shall receive payment of their Allowed Claims as set forth below:

a. Holders of Class 4 Allowed Claims shall share on a Pro Rata basis monies deposited into the Unsecured Creditor Account as set forth herein.  As set forth in Article IV, paragraph 4.2 of this Plan, each month following the Effective Date of the Plan for until Allowed Administrative Claims are paid in full and the for a period of five years, TD will deposit ___% of Gross Revenues for the term of the Plan into the Unsecured Creditor Account.  Every time three deposits have been made into the account, the balance of the account will be distributed to holders of Allowed Administrative Claims who have agreed to accept payment under Article IV, paragraph 4.1 of this Plan.  Once the holders of Allowed Administrative Claims have been paid in full, every time thereafter three deposits have been made into the Unsecured Creditor Account, the balance of the account will be distributed to Class 4 claimants holding Allowed Claims on a Pro Rata basis.

7.2 – All funds recovered by the Debtor on account of Avoidance Actions shall be distributed to Allowed Administrative Claims until paid in full and then to Class 8 claimants holding Allowed Claims on a pro-rata basis, net of attorneys' fees and costs.

Whether or not the Debtor pursues any Avoidance Actions shall be up to the Debtor and the decision to pursue such claims shall be discretionary with the Debtor.

## ARTICLE VIII

## SPECIFICATION AND TREATMENT OF CLASS 5 INTERESTS

8.1 - Class 5 includes the Interests in TD held by the pre-confirmation interest holders. Class 5 is unimpaired by this Plan.

## ARTICLE IX

## MEANS FOR THE PLAN'S EXECUTION

9.1 – **Operation of Business**. The Debtor shall be empowered to take such action as may be necessary to perform its obligations under this Plan.

9.2 – **Unsecured Creditor Account.** On the Effective Date of the Plan, TD will open a separate interest bearing deposit account at a federally insured commercial bank selected by TD. The bank account will be maintained by TD as the Unsecured Creditor Account into which all payments made by TD for the benefit of the Administrative Claimants and Class 4 creditors will be made until the term of the Plan is completed.

9.3 – **Effectuating the Plan**. On the Effective Date of the Plan, Lucas Yockim shall be appointed as the agent of TD pursuant to 11 U.S.C. §1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plans, including but not limited to execution of documents.

9.4 - **Disputed Claim Procedure**. Distributions to any class of creditor will only be made on account of Allowed Claims. In the event that distributions are made at a time that a Claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held by the Debtor in an interest bearing bank account until the Claim is Allowed or disallowed. If Allowed, the Claim will be paid its appropriate share of the withheld payment. If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired Allowed claimants of the Debtor, or if all holders of Allowed Claims have been paid in full, paid to the Debtor.

9.5 - **Claims and Litigation Bar Date and Standing**. All Claim objections and Avoidance Actions in the case must be filed by the later of (a) limitation period set forth in 11 U.S.C. §546(a) or (b) 60 days following the Effective Date. The Debtor shall have standing to commence, prosecute, and settle claim objections and Avoidance Actions without need for Court approval. TD has retained Buechler & Garber, LLC to litigate the Claim objections and Avoidance Actions on an hourly basis and/or a contingency fee basis, at 40% plus costs and expenses, as it determines is reasonable and in the best interest of the estate.

9.6 - **Administrative Expense Bar Date**. All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 60 days following the Effective Date of the Plan.

9.7 - **Monthly Installments.** Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan. The Debtor shall then have a five day grace period within which the monthly payment must be received by the payee before the Debtor shall be in default, unless a longer period is specified elsewhere in the Plan.

9.8 - **Final Decree.** The Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or 180 days after the Effective Date of the Plan.

9.9 - **Quarterly Fees.** Prior to the entry of the final decree, the Debtor shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee, as required by statute.

9.10 - **Exemption from Transfer Taxes.** Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.11 – **Contractual Relationship.** The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors. In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of its rights and remedies under its security documents, including foreclosure of its deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon the Debtor's failure to cure the default within such ten day period, the creditor may proceed to exercise its rights and remedies.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 - On the Effective Date of the Plan, the Debtor does hereby assume those executory contracts and unexpired leases listed in Exhibit A attached hereto and incorporated herein by reference, which have not been assumed by prior Order of the Court prior to the Confirmation Date. On the date of the entry of an Order confirming the Plan, the Debtor shall be the holders of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtor and the other parties thereto. Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. §365(b) and (f).

10.2 - On the Effective Date of the Plan, the Debtor does hereby reject all executory contracts and unexpired leases to which they are a party which are listed in Exhibit B, attached hereto and incorporated herein by reference which have not been rejected by prior Order of the Bankruptcy Court prior to the Confirmation Date. Executory contracts and unexpired leases will be rejected pursuant to the provisions of

11 U.S.C. §365. Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected.

10.3 - An Order confirming this Plan constitutes approval by the Court of the assumption or rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of 11 U.S.C. § 365 and the Rules.

10.4 - **Claims Arising from Rejection.** All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within twenty (20) days after the earlier of (i) the date of the Bankruptcy Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date. Any claims not filed within such time shall be forever barred against the Debtor, its estate and property and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as Class 8 unsecured Claims.

**ARTICLE XI**

**MISCELLANEOUS PROVISIONS**

11.1 **Revestment.** On the Effective Date of the Plan all property of the estate shall revest in the Debtor free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan.

11.2 **Retention of Jurisdiction**. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

(a)  Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

(b)  Determination of the request for payment of claims entitled to priority under 11 U.S.C. § 507(a)(2), including compensation of the parties entitled thereto;

(c)  Resolution of any disputes regarding interpretation of the Plan;

(d)  Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

(e)  Modification of the Plan pursuant to 11 U.S.C. § 1127;

(f) Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

(g) Adjudication of any cause of action brought by the Debtor-in-Possession, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §§ 542-549. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

(h) Entry of a final decree.

11.3 - **Satisfaction of Claims.** TD shall receive a discharge on the Effective Date of the Plan pursuant to Section 1141(d). Confirmation of the Plan and the occurrence of the Effective Date of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4 **Headings**. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.5 **Notices.** All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

a. To:
Lucas Yockim
TD Manufacturing, LLC
21662 CR 52
Greeley, CO 80631

With a copy to:
Aaron A. Garber
Buechler & Garber, LLC

999 18th Street, Suite 1230S
Denver, CO 80202
Fax: 720-381-_____
Email:aaron@bandglawoffice.com

b.  To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, other, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

11.6 - **Successors and Assigns**. The Plan will be binding upon the Debtor, any creditor affected by the Plan and its heirs, successors, assigns and legal representatives.

11.7 - **Unclaimed Payments**. If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.5, within six months of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8 - **Committee Termination**. Any Creditors Committee appointed in the bankruptcy case shall terminate on the Effective Date.

## ARTICLE XII
## CONFIRMATION REQUEST

12.1 - The Debtor, as proponents of the Plan, request confirmation of the Plan pursuant to 11 U.S.C. § 1129. The Debtor will solicit acceptance of the Plan after their Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest. In the event the Debtor does not obtain the necessary acceptances of its Plan, they may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. §1129(b). The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each

class of Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: January 17, 2018

TD MANUFACTURING, LLC

By: _____
Lucas Yockim, Manager

Aaron A. Garber
Buechler & Garber, LLC
999 18th Street, Suite 1230S
Denver, CO 80202
Telephone: 720- 381-0045
Fax: 720-381-0382
Email: aaron@bandglawoffice.com

ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION

# EXHIBIT A

## Executory Contracts and Unexpired Leases Assumed

    1.     All contracts and leases previously assumed or for which a motion to assume is pending.

    2.     All leases and contracts that are not specifically rejected.

**EXHIBIT B**

**Executory Contracts and Unexpired Leases Rejected**

A.     All leases and contracts previously rejected by Court Order.

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

|                          |   |                          |
|--------------------------|---|--------------------------|
| IN RE:                   | ) |                          |
|                          | ) |                          |
| TD MANUFACTURING, LLC    | ) |                          |
| EIN: 47-1730944          | ) | Case No. 17-14243-MER    |
|                          | ) |                          |
| Debtor.                  | ) |                          |

## DISCLOSURE STATEMENT TO PLAN OF
## REORGANIZATION DATED JANUARY 17, 2018

### INTRODUCTION

This Disclosure Statement ("Disclosure Statement") has been prepared by TD Manufacturing, LLC ("TD" or the "Debtor") to accompany its Chapter 11 Plan of Reorganization dated January 17, 2018 (the "Plan") which has been filed in the Debtor's Chapter 11 case. This Disclosure Statement is being provided to all creditors and interest holders of the Debtor. This Disclosure Statement is subject to final approval pursuant to 11 U.S.C. Section 1125 by the United States Bankruptcy Court for the District of Colorado as containing adequate information to enable creditors and interest holders to determine whether to accept the Debtor's Plan. The Court's approval of this Disclosure Statement does not constitute a decision on the merits of the Debtor's Plan. Issues related to the merits of the Plan and its confirmation will be the subject of a confirmation hearing, which is scheduled for _____, _____, 2018 at __:_0__.m. in Courtroom C, at the **Customs House, 721 19th Street, Denver, Colorado.**

**THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT.**

The Plan of Reorganization is the governing document or contract with creditors once it is confirmed by the Court. In the event of any inconsistencies between the Plan and this Disclosure Statement, the Plan supersedes the Disclosure Statement and will be the sole Court approved document that governs the post-confirmation relationship and agreements between the parties.

This Disclosure Statement is provided to you along with a copy of the Debtor's Plan and a Ballot to be used for voting on the Plan. Please complete the Ballot according to the instructions contained on the Ballot if you intend to vote for or against the Debtor's Plan. Each creditor or interest holder may vote on the Plan by completing the enclosed Ballot and returning it to counsel for the Debtor:

> Aaron A. Garber, Esq.
> Buechler & Garber, LLC
> 999 18th Street, Suite 1230S
> Denver, CO 80202

This Ballot must be received by the appropriate counsel designated above by no later than **5:00 P.M. Mountain Time on _____, 2018**, which date has been set by the Court as the last day to vote on the Plan. Terms contained in this Disclosure Statement, which are defined in the Plan, have the same meaning as set forth in the definitional section of the Plan, Article II. **WARNING: IF YOU ARE A CREDITOR YOUR RIGHTS WILL BE IMPAIRED BY THE PLAN, unless otherwise indicated in the Plan.**

**Recommendation.** As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors. The Plan proposes a payment to unsecured creditors over time through the Debtor's earnings to achieve the maximum recovery for its creditors. **Again, the Debtor strongly believes that confirmation of the Plan is in the best interests of creditors and recommends that all creditors entitled to vote on the Plan vote to accept the Plan.**

**Voting Requirements.** Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting.

**Voting Classes**. Each holder of an Allowed Claim in Class 1, 2, 3, and 4, shall be entitled to

vote to accept or reject the Plan.

**Deemed Acceptance of Plan**. The Plan treats Class 5 as unimpaired. Unimpaired classes are conclusively presumed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

**Deemed Rejection of Plan**. The Plan does not provide for any Class of creditors that shall receive and retain nothing under the Plan. Classes that receive and retain nothing under the Plan are deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

**One Vote Per Holder.** If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

## OVERVIEW OF THE PLAN

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on May 9, 2017 (the "Petition Date"). The Debtor remains a Debtor-in-Possession. The Debtor is a metal fabrication and powder coating business operating in the Greeley area. This Plan provides for the reorganization of the Debtor under chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor shall restructure its debts and obligations and continue to operate in the ordinary course of business.

## CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows the Debtor to retain its assets during administration of its Chapter 11 case as Debtor-in-Possession and following confirmation of a Plan as reorganized Debtor or as provided in the Plan. Once confirmation of a Plan of Reorganization is approved by the Court, the Plan of Reorganization is the permanent restructuring of the Debtor's financial obligations. The Plan also provides a means through which the Debtor will restructure or repay its obligations. The Plan will provide the Debtor with an opportunity to restructure its debt through its office supply operations.

The Plan of Reorganization divides creditors into classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All member Interests are also classified and treated alike. Each Class of creditors or interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual

rights to which each creditor in the class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the claim as it existed prior to the default.

The Bankruptcy Court set a bar date establishing June 26, 2017 as the last date for filing Proofs of Claim. The Plan provides that Claims and Interests of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or Interest or which otherwise appear in the Schedules filed by the Debtor and are not scheduled as disputed, contingent or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether or not their claims have been scheduled as disputed, contingent or unliquidated by reviewing the Schedules filed by the Debtor in the Bankruptcy Court for the District of Colorado. Alternatively, creditors may contact counsel for the Debtor directly in order to determine how they have been scheduled.

Chapter 11 does not require that each holder of a Claim against or Interest in the Debtor to vote in favor of the Plan in order for the Court to confirm the Plan. The Plan, however, must be accepted by at least one impaired Class of Claims by a majority in number and two thirds in amount, without including insider acceptance, of those Claims of such Class actually voting on the Plan. Assuming one impaired Class votes to accept the Plan, it may be confirmed over its rejection by other Classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable, with respect to each Class of Claims or Interests that is impaired under and has not accepted the Plan. Generally, a plan unfairly discriminates against a class if another class of equal priority will receive greater value under the plan than the nonaccepting class without reasonable justification.

The fair and equitable requirement typically refers to the "absolute priority rule." The Bankruptcy Code requires that if interest holders retain an interest or receive anything under the Plan, then the unsecured creditor classes must either be paid the full value of their claims or vote to accept the Plan. Since the Debtor believes that the Plan provides the best alternative for creditors, all creditors are urged to vote to accept the Plan.

If all Classes of Claims and Interests vote to accept the Plan, the Court may confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation. Among other things, Section 1129 requires that the Plan be in the best interest of the holders of Claims and Interests and be feasible through a showing that confirmation will not be followed by the need for

further financial reorganization of the Debtor.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

In September of 2014, Lucas and Lori Yockim (the "Yockims") formed the Debtor, TD Manufacturing, LLC for the purpose of acquiring the assets of T and D Manufacturing, LLC ("Seller"). In 2014, the Yockims hired an appraiser recommended by Seller and Colorado East Band & Trust, now known as TBK Bank ("TBK"), who valued the assets of Seller at $1,600,000. Seller also provided financials for the company which supported a loan of $1,600,000. Accordingly, on or around March 19, 2015, the Debtor entered into a secured loan transaction with TBK, whereby the Debtor's borrowed $806,250 and pledged all inventory and equipment owned or subsequently acquired (the "TBK Loan Proceeds"). The TBK Loan Proceeds were utilized to purchase the assets of the Seller. The Debtor entered into a secured loan with Colorado Lending Source, Ltd. ("CLS") on or around April 2, 2015, which loan is guaranteed by the Small Business Administration. The Debtor borrowed from CLS $665,000 (the "CLS Loan Proceeds"). CLS filed with the Colorado Secretary of State, a UCC-1 on April 2, 2015, in which CLS asserts a lien in certain pieces of enumerated equipment, and all additions, accessions, and substitutions thereof and all proceeds and products therefrom. The CLS Loan Proceeds were utilized to purchase assets from the Seller. The amount owing to CLS as of the Petition Date, pursuant to the Debtor's books and records, is approximately $640,486. The amount owing to TBK as of the Petition Date, pursuant to the Debtor's books and records, is approximately $740,000.

Immediately after the acquisition of the Seller's assets the business failed to perform as set forth in the financials provided by the Seller. TD was failing to operate profitably. TD was unable to meet its loan obligations as they came due. In February of 2017, TD had an appraisal completed to determine the value of its assets to determine if a refinancing was possible (the "2017 Appraisal"). The 2017 Appraisal showed an asset value of approximately $183,000.

Given TD's inability to meet its loan obligations or refinance give the true asset value provided in the 2017 Appraisal, TD was compelled to seek relief under Chapter 11 of the Bankruptcy Code so that it could liquidate assets it no longer needed and restructure its debt obligation so that it can operate profitably.

## CURRENT MANAGEMENT

The Debtor's managing member is Lucas Yockim. Mr. Yockim manages the day to day operations of the Debtor. Mt Yockim is paid a salary of approximately $8,333 per month by the Debtor. This salary will continue to be paid to Mr. Yockim post-Petition Date. Any raises or bonuses will be considered based upon the performance of the Debtor.

## CURRENT BUSINESS OPERATIONS

The Debtor will continue to focus on its primary lines of business, powder coating and metal fabrication.

## HISTORICAL PERFORMANCE OF TD

Attached hereto as Exhibit A is a summary of TD's performance during the bankruptcy case.

## DESCRIPTION OF ASSETS

The values for the Debtor's primary assets, as of December 1, 2017, are as follows:

| Asset | Market Value |
|---|---|
| Cash: | $7,758 |
| Furniture, Fixtures, Equipment, Inventory: | $80,000 |
| Total: | $87,758 |

The Debtor's assets have the values listed above. The Debtor's asserted are encumbered by two liens. The first lien is held by TBK Bank, SSB, who holds a secured claim in the scheduled amount of $739,925. The lien is held by U.S. Small Business Administration, who hold a secured claim in the scheduled amount of $640,486. Thus, the secured claims encumbering the Debtor's exceed the value of the assets. The Debtor is reserving the right to bring Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550 and state law based fraudulent conveyance actions. The Debtor is still evaluating which, if any such claims, are viable. Among the factors being considered are the potential defenses available to the potential preference defendants, the ability to collect if a judgment is obtained, the potential cost of litigation, and the necessity of the potential preference defendant to provide goods and/or services in the future to TD, which relationships could be impacted by preference litigation, having a negative impact upon the ability of TD to reorganize and

maximize the distribution to unsecured creditors.

The Debtor's Statement of Financial Affairs lists certain payments to creditors within the 90 days prior to the Petition Date, which form the basis for the potential preference actions. Each is discussed below.

1.      T and D Manufacturing, LLC/Timothy Sharp ("Landlord"), the landlord, was paid $12,00 in rent during the avoidance period. The Debtor has assumed the lease which provides a complete defense to any avoidance claim.

2.      Rockwell American is a supplier/trade vendor of the Debtor. Rockwell American was paid $8,117 during the avoidance period. The Debtor is still evaluating whether to bring an avoidance claim.

The Debtor may hold additional litigation claims against the Landlord. The commercial real property lease (the "Lease") is for the property address 21588 CR 52 (the "Premises"). According to the county real estate records, the Premises is comprised of many acres of land, which includes the buildings where the Debtor operates its business, the Landlord's residence, and land and buildings where the landlord stores personal property and operates businesses. The Lease does not authorize the use of the Premises by the Defendant. The Lease provides for the real property and all improvement on the Property are leased to the Debtor. Notwithstanding that fact, the Defendant is currently utilizing multiple properties on the Premises, including, but not limited to, his personal residence and a horse farm. The Defendant has rental properties on the Premises. The Defendant has been operating a horse boarding business. The Defendant has a storage container business he is operating on the Premises. Since the Lease was executed, the Defendant has not paid any rent or other consideration to TD for the use of the Premises. Based upon these facts, the Debtor may hold claims against the Landlord for breach of contract, breach of duty of good faith and fair dealing, turnover of property of the estate, unjust enrichment, injunctive relief, and setoff/offset.

## DESCRIPTION OF LIABILITIES

A.      **Priority Claims**

   1. **Priority Claims**

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under 11 U.S.C. § 507(a) of the Bankruptcy Code, excluding any Administrative Claim or

Tax Claim.

## 2. Administrative Claims

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) or §1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to §507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates under 28 U.S.C. §1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under §503(b) of the Bankruptcy Code. The Administrative Claims, including the professional fees incurred during the case which remain unpaid, are as follows:

The Debtor retained Buechler & Garber, P.C. ("BG") as its bankruptcy counsel. The Debtor provided BG with a retainer in the amount of $12,847 for post-petition services. The Debtor estimates that the total legal fees and costs to BG as of the estimated date on which the Plan will become effective, May 1, 2018, will be at least $40,000 depending upon the level of litigation in the future. The Debtor estimates that BG will hold an Administrative Claim for unpaid legal fees of at least $27,000 on the Effective Date of the Plan. The legal fees could increase or decrease depending on the level of litigation over these issues and creditor claims.

The Debtor has paid its other administrative expenses in the ordinary course of business during the course of the bankruptcy case, and therefore does not believe there will be any other material administrative claims asserted against the estate.

### Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8). The IRS filed a Tax Claims in the amount of $1,693.66. No other Tax Claims were filed or scheduled.

**B.    Secured Claims**

**1.  TBK Bank, SSB:**

TBK Bank, SSB ("TBK") is the holder of a first priority Secured Claim on account of the Secured Note, Security Agreement and UCC-1 financiering encumbering the Debtor's inventory and equipment. The Debtor has liquidated certain of its assets during the bankruptcy case and paid the net proceeds to TBK. The Debtor's remaining assets have a value of approximately $80,000. TBK has filed a proof of claim in the amount of $739,925.93. The TBK Claim is secured to the value of its collateral and unsecured for the balance pursuant to Bankruptcy Code § 506.

**3.  U.S. Small Business Administration:**

The U.S. Small Business Administration ("SBA") is the holder of a second priority Secured Claim on account of the Secured Note, Security Agreement and UCC-1 financiering encumbering the Debtor's enumerated equipment, and all additions, accessions, and substitutions thereof and all proceeds and products therefrom. The Debtor's assets have a value of approximately $80,000. SBA has filed a proof of claim in the amount of $640,898. The SBA is secured to the value of its collateral and unsecured for the balance pursuant to Bankruptcy Code § 506.

**C.    Non-Priority Unsecured Creditors**

The Debtor has a number of unsecured pre-petition creditors. Unsecured creditors may have filed proofs of Claim as of the bar date set in this case for filing claims which was June 26, 2017. The Debtor has compiled a list of the Claims which it scheduled in the bankruptcy case and the Claims filed by creditors. To the extent that a creditor who was scheduled by the Debtor filed a Claim, the amount of the Claim as filed by the creditor is considered in the analysis.

General unsecured Claims in the total amount of $666,897.68 have been asserted against the Debtor's estate, which is inclusive of those amounts which are being treated as unsecured pursuant to Section 506 and Proofs of Claims filed in the Bankruptcy Case, which claim amount exceeds the Scheduled claim amount. The amount of unsecured claims as set forth in the Debtor's books and records totals $22,311.70. The Claims list containing all known general unsecured Claims is attached to this Disclosure Statement as Exhibit B. The Debtor projects that general unsecured creditor claims totaling approximately $664,172.83 will be Allowed Class 4 Claims.

**D. Leases and Executory Contracts**
**Contracts and Leases**

The Debtor is, under the terms of the Plan, assuming all executory contracts and unexpired leases previously assumed by the Debtor pursuant to Court Order or for which a motion to assume has been filed and is pending. The Debtor is also assuming those executory contracts and unexpired leases listed on Exhibit A to the Plan. The Debtor maintains the right to modify Exhibit A of the Plan through the fifteenth day prior to the hearing to consider confirmation of the Plan. Confirmation of the Plan shall constitute a determination that the payments to be made to creditors of assumed leases or executory contracts pursuant to the Plan satisfies all conditions precedent set forth in 11 U.S.C. § 365.

The Debtor is rejecting all executory contracts and unexpired leases: (a) previously rejected by Court Order, (b) subject to a pending motion to reject, or (c) listed on Exhibit B to the Plan. All proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the earlier of (i) the date of the Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date.

## DESCRIPTION OF THE PLAN

The Debtor filed its Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on January 17, 2018. The Plan provides for the reorganization of the Debtor. Funding of the Plan will be derived through a restructuring of the Debtor's debt, to be satisfied from ongoing business operations.

The Plan provides for the specification and treatment of all creditors and Interest holders of the Debtor. The Plan identifies whether each Class is impaired or unimpaired. A Class is unimpaired only if the Plan leaves unaltered the legal, equitable or contractual obligations between the Debtor and the unimpaired claimants or interest holders. The following is a brief summary of the Plan. The actual text of the Plan should be reviewed for more specific detail. In the event of any conflict between the Plan and this Disclosure Statement, the terms of the Plan govern.

As provided in § 1123(a)(1) of the Code, the Priority, Administrative and Tax Claims against the Debtor are undesignated. The holders of such Allowed Claims are not entitled to vote on the

Plan and such claims will be paid in full.

The classes of creditors are set forth in the Plan as follows:

Class 1 - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 2 - The Allowed Secured Claim held by TBK Bank.

Class 3 – The Allowed Secured Claim held by Colorado Lending Source, Ltd.

Class 4 – The Allowed Claims held by unsecured creditors.

Class 5 - The Interest of TD.


## A.  CLAIMS

**Unclassified Priority Claims**

### 1.  Administrative Claims

The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or, if agreed to by the claim holder, in full from the Unsecured Creditor Account or treated as otherwise agreed to by the particular holders of such Claims. BG is prepared to be paid from the Unsecured Creditor Account if the Debtor has insufficient funds to satisfy its Allowed Administrative Expense Claim on the Effective Date of the Plan. If a holder of an Allowed Administrative Expense Claim elects to be paid from the Unsecured Creditor Account, Class 4 will not begin to receive payments until Administrative Claims are paid in full, at which point Class 4 will begin to receive payments. Once the holders of Allowed Administrative Claims have been paid in full, the balance of the account will be distributed to Class 4 claimants holding Allowed Claims on a Pro Rata basis. Section 507(a)(2) Administrative Claims that are Allowed by the Court after the Effective Date of the Plan shall be paid upon Allowance.

Each month for five years following the Effective Date of the Plan, TD will deposit 2% of Gross Revenues during the term of the Plan. Every time three deposits have been made into the account, the balance of the account will be distributed to the holders of Allowed Administrative

11

Claims on a Pro Rata basis until such time as all holders of Allowed Administrative Claims have been paid in full.

The Debtor estimates that the total legal fees and costs to BG as of the estimated date on which the Plan will become effective, May 1, 2018, will be $40,000. BG has been paid approximately $12,847 during the pendency of the case pursuant to applicable Court orders. The Debtor estimates that BG will hold an Administrative Claim for unpaid legal fees of not less than $13,000 on the Effective Date of the Plan. The legal fees could increase or decrease depending on the level of litigation over these issues and creditor claims.

The Debtor has paid all other administrative expenses in the ordinary course of business during the course of the bankruptcy case, and therefore does not believe that any other material administrative claims exist against the estate.

**2.      Tax Claims**

The allowed Claims of a type specified in Section 507(a)(8) of the Code, Claims of unsecured governmental taxing authorities, shall be paid on the Effective Date. The IRS filed a Tax Claims in the amount of $1,693.66. No other Tax Claims were filed or scheduled.

**1.   United States Trustee Fees**

The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

**Priority Claims**

**Class 1**, Allowed Class 1 Priority Claims shall be paid in full on the Effective Date. The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. The Debtor has not scheduled any Class 1 claims and none have been asserted against the estate.

**Secured Claims**

**Class 2, TBK Bank.** The Class 2 Secured Claim is impaired by this Plan. The Class 2

Secured Claim will be treated under the Plan as follows:

a. The principal amount of the Class 2 claim will be allowed in an amount of $71,180, or if the Class 2 claimant timely objects to such amount in writing and serves a copy of such objection on the Debtor, an amount determined by the Court at the confirmation hearing, or an amount as agreed upon by TD and the Class 2 claimant on or before the Confirmation Date. Pursuant to 11 U.S.C. § 506, the claim is secured up to the value of the collateral for the claim and unsecured for the balance.

b. The Class 2 Claim will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2 claimant timely objects to such rate in writing and serves a copy of such objection on the Debtor, such rate will be determined by the Court at the confirmation hearing as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by TD and the Class 2 claimant.

c. The Class 2 Claim shall be paid in month equal installments amortized over 5 years.

d. The Class 2 claimant will retain all liens that secure its Claim as of the Petition Date, subject to payment modification and principal amount of the loan as set forth herein.

e. All other provisions of the loan documents underlying the Class 2 Allowed Secured Claim are unmodified by this Plan.

**Class 3, U.S. Small Business Administration.** The Class 3 Secured Claim is impaired by the Plan. The Class 3 Secured Claim will be treated as follows:

a. The property securing the Class 3 claim shall be valued at $80,000. The lien of U.S. Small Business Administration shall be released and the Class 3 Claim shall be treated as a Class 4 general unsecured claim pursuant to 11 U.S.C. § 506.

b. To the extent U.S. Small Business Administration objects to its treatment under subparagraph a above, the principal amount of the Class 3 claim will be allowed in an amount determined by the Court at the confirmation hearing, or an amount as agreed upon by the Debtor and the Class 3 claimant on or before the Confirmation Date. Pursuant to 11

U.S.C. § 506, the claim is secured up to the value of the collateral for the claim and unsecured for the balance.

    c. If the Class 3 claim is allowed as a secured claim, shall be treated as follows:

        i. The Class 3 Claim will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 3 claimant timely objects to such rate in writing and serves a copy of such objection on the Debtor, such rate will be determined by the Court at the confirmation hearing as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by TD and the Class 3 claimant.

        ii. The Class 3 Claim shall be paid in month equal installments amortized over 5 years.

        iii. The Class 3 claimant will retain all liens that secure its Claim as of the Petition Date, subject to payment modification and principal amount of the loan as set forth herein.

        iv. All other provisions of the loan documents underlying the Class 3 Allowed Secured Claim are unmodified by the Plan.

**General Unsecured Creditors**

  **Class 4, General Unsecured Creditors**

General unsecured creditors are treated as follows under the Plan:

Class 4 consists of those unsecured creditors of TD who hold Allowed Claims. Class 4 shall receive payment of their Allowed Claims as set forth below:

    a. Holders of Class 4 Allowed Claims shall share on a Pro Rata basis monies deposited into the Unsecured Creditor Account as set forth in the Plan, and described herein. As set forth in Article IV, paragraph 4.2 of this Plan, each month following the Effective Date of the Plan until Allowed Administrative Claims are paid in full and the for a period of five years, TD will deposit 2% of Gross Revenues for the term of the Plan into the Unsecured Creditor Account. Every time three deposits have been made into the account, the balance of the account will be distributed to holders of Allowed Administrative Claims who have agreed to accept payment under Article IV, paragraph 4.1 of the Plan. Once the holders of Allowed

Administrative Claims have been paid in full, every time thereafter three deposits have been made into the Unsecured Creditor Account, the balance of the account will be distributed to Class 4 claimants holding Allowed Claims on a Pro Rata basis.

All funds recovered by the Debtor on account of Avoidance Actions shall be distributed to Allowed Administrative Claims until paid in full and then to Class 4 claimants holding Allowed Claims on a pro-rata basis, net of attorneys' fees and costs. Whether or not the Debtor pursues any Avoidance Actions shall be up to the Debtor and the decision to pursue such claims shall be discretionary with the Debtor.

**Interest**

**Class 9, Interests in TD**

Class 5 includes the Interests in TD held by the pre-confirmation interest holders. Class 5 is unimpaired by the Plan.

## PLAN FEASIBILITY

The Debtor believes that the Plan, as proposed, is feasible. The overall feasibility of the Plan is premised upon the restructuring of the Debtor's debts. The reduction of the secured debt to the value of the Debtor's collateral and a restructuring of the payment to the secured creditors will permit the Debtor to operate profitably. The Debtor's ongoing business operations provide a means of funding the Plan. The restructuring of the Debtor's debt and continuing to operate in the ordinary course will allow the Debtor to maximize the distribution to creditors.

The Debtor's restructuring efforts have primarily focused on its efforts to increase sales and revenue. In addition, the Debtor has liquidated all equipment and machinery it is no longer utilizing, reducing the claim amount of TBK Bank and the operational costs associated with such equipment.

Attached to this Disclosure Statement as Exhibit C are the detailed projections of TD's future income and expenses from the operation of its business, including payments to creditors under the Plan (the "Projections"). As set forth on the Projections, TD's Gross Income upon the Effective Date of the Plan, for the first year of the Plan will be $442,800. TD's projected expenses are $430,779. The payment into the Unsecured Creditor Account, for the first year of the Plan will be

$9,600. It is projected TD will have a net profit for this period of $2,421.

The Projections further assume TD's Gross Income for Plan year 2 will be $464,940. TD's projected expenses are $443,709. The payment into the Unsecured Creditor Account, for Plan year 2 will be $10,080. It is projected TD will have a profit for this period of $11,151.

The Projections further assume TD's Gross Income for Plan year 3 will be $488,187. TD's projected expenses are $463,189. The payment into the Unsecured Creditor Account, for Plan year 3 will be $10,584. It is projected TD will have a profit for this period of $14,413.

The Projections further assume TD's Gross Income for Plan year 4 will be $512,596. TD's projected expenses are $486,649. The payment into the Unsecured Creditor Account, for Plan year 4 will be $11,113. It is projected TD will have a profit for this period of $14,883.

The Projections further assume TD's Gross Income for Plan year 5 will be $538,226. TD's projected expenses are $510,608. The payment into the Unsecured Creditor Account, for Plan year 5 will be $11,668. It is projected TD will have a profit for this period of $15,949.

## TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or interest holders. Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## EVENTS DURING THE CHAPTER 11 CASE

### Cash Collateral

On May 15, 2017, the Debtor file its Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion"), seeking to use cash collateral on an interim basis and requesting that the Court set a hearing to consider entry of a final order authorizing the use of cash collateral. The Cash

Collateral Motion was duly noticed (the "Notice"). The only party to respond to the request for interim use of cash collateral was secured creditor TBK Bank.

On May 24, 2017, the Court entered the Stipulated Order approving the interim use of cash collateral and setting a final hearing for June 16, 2017 at 9:30 a.m. (the "Hearing").

The Notice set May 29, 2017 as the deadline to object to the final use of cash collateral. The only party to object to the final use of cash collateral was TBK Bank.

The Debtor and TBK Bank entered into the proposed Stipulated Order Authorizing the Use of Cash Collateral and Vacating Hearing on Final Use of Cash Collateral (the "Cash Collateral Order"). The Cash Collateral Order provides protections for all secured creditors who may have a lien on cash collateral. The Cash Collateral Order provides certain additional protections for TBK Bank, including certain reporting requirements and adequate protection payments. The Cash Collateral Order is for a period of six months.

The Debtor and TBK Bank entered into an agreement for an additional six month use of cash collateral while the Debtor proceeds with the Plan confirmation process.

**Motion to Employ Auctioneer and Sell Assets**

The Debtor had numerous pieces of equipment and machinery that it is not utilizing (the "Unnecessary Equipment"). The Debtor sought and obtained court approval to liquidate the Unnecessary Equipment by way of auction. The Debtor retained Dickensheet & Associates, Inc. to liquidate the Unnecessary Equipment. Dickensheet & Associates, Inc. conducted the auction and realized $18,451.40. The proceeds have been paid to TBK Bank.

**Sale of Assets of Assets to Black Mountain Manufacturing, LLC**

The Debtor sought and obtained court approval to sell the following equipment for the purchase price as follows: (i) 8 Drawer Tool Cabinet for $200; (ii) 10 Drawer Tool Cabinet for $300; and (iii) 2000 PCC Olofsson PTH2015 Five Axis CNC Lathe $1,800 to Black Mountain Manufacturing, LLC. Black Mountain also paid the legal fees and costs incurred by the Debtor in seeking approval of the motion.

**Motion to Assume Commercial Real Property Lease**

The Debtor filed its Motion to assume its commercial real property lease with Timothy Sharp/T and D Manufacturing, LLC. The landlord objected to the motion asserting there were a

number of defaults, both incurable and curable. The Debtor disputed the positions taken by the landlord. The Court conducted an evidentiary hearing. The Court rejected the landlord's argument that there were incurable defaults. The Court overruled the remaining arguments of the landlord and agreed with the Debtor that the sole cure issues were that the Debtor was to pay its share of the 2016 real estate taxes and the landlord needed to be listed as a notice party of the real property insurance. The Debtor cured both of these issues and the lease was assumed,

## LIQUIDATION ANALYSIS UNDER CHAPTER 7

The principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

Under a Chapter 7 liquidation, secured creditors would seek relief from the automatic stay to foreclose their security interests in Debtor's property. The amount of the secured claims exceeds the value of the collateral. The values for the Debtor's primary assets, as of December 1, 2017, are as follows:

| Asset | Market Value |
|---|---|
| Cash: | $7,758 |
| Furniture, Fixtures, Equipment, Inventory: | $80,000 |
| Total: | $87,758 |

The assets are subject to the claims of secured creditors. TBK Bank holds a first priority lien on the Debtor's assets. TBK Bank's secured claim is approximately $739,925.93, which exceeds the value of the Debtor's assets. The SBA has a second priority lien on the Debtor's assets. The SBA assets a secured claim in the amount of $640,898. Accordingly, there would be no distribution to unsecured creditors in a liquidation.

By contrast in the Chapter 11, under the Plan, the Debtor projects it will deposit $53,046 into

Assuming unsecured claims as asserted against the Debtor's estate totaling $666,897, the projected pro rata distribution to Class 4 claimants is 4%. The return under the Plan is better return than no return which would be received in a Chapter 7. The Plan provides the only return to unsecured creditors.

DATED: January 17, 2018          TD MANUFACTURING, LLC

By: _____
        Lucas Yockim, Manager


Buechler & Garber, P.C. ("BG") has acted as legal counsel to TD Manufacturing, LLC on bankruptcy matters during the Chapter 11 case. BG has prepared this Disclosure Statement with information provided primarily TD Manufacturing, LLC. The information contained herein has been approved by TD Manufacturing, LLC. BG has not made any separate independent investigation as to the veracity or accuracy of the statements contained herein.

Counsel to the Debtor and
Debtor- In-Possession TD Manufacturing, LLC:

BRINEN & GARBER, LLC

By: _____
        Aaron A. Garber (#36040)
        999 18th Street, Suite 1230S
        Denver, CO 80202
        Telephone: (720) 381-0045
        Telecopier: (720) 381-0382
        Email: aaron@bandglawoffice.com



# TD Manufacturing

## PROFIT AND LOSS
May 9 - December 31, 2017

|  | TOTAL |
|---|---|
| **Income** | |
| Refunds-Allowances | 1,844.25 |
| Services | |
| Machine Shop Income | 18,152.52 |
| Powdercoating Income | 280,781.20 |
| **Total Services** | **298,933.72** |
| Uncategorized Income-1 | 3.48 |
| **Total Income** | **$300,781.45** |
| **Cost of Goods Sold** | |
| COGS - trailers | 1,167.84 |
| Subcontractors - COS | 1,703.20 |
| Supplies & Materials - COGS | 20,104.96 |
| **Total Cost of Goods Sold** | **$22,976.00** |
| **GROSS PROFIT** | **$277,805.45** |
| **Expenses** | |
| Bank Charges | 6.00 |
| Insurance | 9,847.46 |
| Interest Expense | 2,000.00 |
| Legal & Professional Fees | 1,441.30 |
| Meals and Entertainment | 453.51 |
| Office Expenses | 620.35 |
| Payroll Expenses | |
| Taxes | 14,414.53 |
| Wages | 177,080.31 |
| **Total Payroll Expenses** | **191,494.84** |
| QuickBooks Payments Fees | 706.88 |
| Rent or Lease | 32,000.00 |
| Repair & Maintenance | 3,239.58 |
| Returned check | -100.00 |
| Taxes & Licenses | 621.71 |
| Travel | 196.80 |
| Utilities | 17,363.37 |
| Vehicle | 3,136.14 |
| **Total Expenses** | **$263,027.94** |
| **NET OPERATING INCOME** | **$14,777.51** |
| **NET INCOME** | **$14,777.51** |

EXHIBIT A

**Case No. 17-14243 - MER TD Manufaturing LLC Exhibit B**

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM |
|---|---|---|
| Atmos Energy | $105.37 | $172.64 |
| Bank of America | $3,346.31 | $0.00 |
| Chase | $11,139.49 | $0.00 |
| Fastenal | $521.26 | $521.26 |
| FM Construction Services | $273.00 | $0.00 |
| Kiffer Industries, Inc. | $626.66 | $0.00 |
| McMaster-Carr | $388.58 | $388.58 |
| Orlando MFG LLC | $1,375.00 | $0.00 |
| Rockwell American | $3,981.24 | $4,767.15 |
| UPS | $36.95 | $0.00 |
| Xcel Energy | $1,892.84 | $2,759.68 |
| IRS | $0.00 | $734.01 |
| TBK Bank | $0.00 | $659.93 |
| U.S. Small Business Administration | $640,486.13 | $640,898.30 |
| **TOTAL** | **$664,172.83** | **$650,901.55** |
| **TOTAL CLAIMS ASSERTED** | | **$666,897.68** |

Total claims asserted is comprised of the "scheduled amount"
except if a proof of claim is filed, in which case the proof of claim
is considered in determing the total claims asserts

## TD Manufacturing — Profit and Loss — Exhibit C

| | month 1 | month 2 | month 3 | month 4 | month 5 | month 6 | month 7 | month 8 | month 9 | month 10 | month 11 | month 12 | Year 1 Total | year 2 | year 3 | year 4 | Year 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Income | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $480,000.00 | $504,000.00 | $529,200.00 | $555,660.00 | $583,443.00 |
| Cost of Goods Sold | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | $3,100.00 | | $39,060.00 | $41,013.00 | $43,063.65 | $45,216.83 |
| Gross Profit | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $36,900.00 | $442,800.00 | $464,940.00 | $488,187.00 | $512,596.35 | $538,226.17 |
| **Expenses** | | | | | | | | | | | | | | | | | |
| TBK Bank | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | $1,343.25 | | $16,119.00 | $16,119.00 | $16,119.00 | $16,119.00 |
| Insurance | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | $1,230.00 | | $14,520.00 | $14,520.00 | $14,520.00 | $14,520.00 |
| Payroll Expenses | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | $24,000.00 | | $299,520.00 | $311,500.80 | $323,960.83 | $336,919.27 |
| Rent or Lease | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 |
| Repair & Maintenance | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | | $8,000.00 | $9,000.00 | $12,000.00 | $15,000.00 |
| Supplies | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | | $750.00 | $750.00 | $750.00 | $750.00 |
| Taxes & Licenses | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | $625.00 | | $3,300.00 | $3,300.00 | $3,300.00 | $3,300.00 |
| Utilities | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | $3,350.00 | | $46,000.00 | $50,000.00 | $55,000.00 | $60,000.00 |
| Vehicle | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | | $7,500.00 | $10,000.00 | $13,000.00 | $16,000.00 |
| Total Expenses | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $35,898.25 | $430,779.00 | $443,709.00 | $463,189.80 | $486,649.83 | $510,608.27 |
| Net Income | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $1,001.75 | $12,021.00 | $21,231.00 | $24,997.20 | $25,946.52 | $27,617.90 |
| 2% gross on ch 11 payment | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $9,600.00 | $10,080.00 | $10,584.00 | $11,113.20 | $11,668.86 |
| Net Income after ch 11 payment | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $201.75 | $2,421.00 | $11,151.00 | $14,413.20 | $14,833.32 | $15,949.04 |

# CERTIFICATE OF SERVICE

The undersigned certifies that on January 18, 2018, I served via ECF a copy of the **MOTION FOR CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT AND TO SET RELATED DATES** notice and proposed order on all parties against whom relief is sought and those otherwise entitled to service pursuant to FED.R.BANKR.P. and these L.B.R. at the following addresses:

| | |
|---|---|
| Beverly L. Edwards<br>8400 E. Prentice Ave.<br>Ste. 1500<br>Greenwood Village, CO 80111-2927 | Travis B Keenan<br>12600 W. Colfax Ave.<br>C200<br>Lakewood, CO 80215-3758 |
| David B. Law<br>1900 W. Littleton Blvd.<br>Littleton, CO 80120-2023 | Daniel J. Morse<br>308 W. 21st St.<br>Ste. 203<br>Cheyenne, WY 82001-3669 |
| US Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout St. Ste. 12-200<br>Denver, CO 80294-6004 | |

/s/ Nichole Garber
For Buechler & Garber, LLC