UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) |
| TD MANUFACTURING, LLC | ) |
| EIN: 47-1730944 | ) Case No. 17-14243-MER |
| | ) Chapter 11 |
| Debtor. | ) |

## MOTION TO APPROVE AUCTION PROCEDURES AND AUTHORIZE SALE OF CERTAIN ASSETS TO HIGHEST BIDDER

The Debtor and Debtor in Possession, TD Manufacturing, LLC ("Debtor"), by and through its attorneys, Buechler & Garber, LLC, for its Motion to Approve Auction Procedures and Authorize Sale of Certain Assets to Highest Bidder, respectfully states as follows:

### BACKGROUND

1. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on May 9, 2017 (the "Petition Date"). The Debtor remains a Debtor-in-Possession.

2. The Debtor is a metal fabrication and powder coating business operating in the Greeley area.

3. The Debtor has received multiple offers from interest buyers to purchase the following pieces of equipment (the "Equipment"):

    a. Quick tech TT42 multi axis turn/mill center lathe system with Mitshubishi CNC control with all cutting tooling, collets, accessories; and

    b. J&L optical comparator with all tooling, and accessories that belong with said comparator

4. Competing bids have been received as follows:

    a. Ron Rolle, and insider of the Debtor, offered to purchase the Equipment for $2,300 plus all legal fees and costs associated with the sale efforts.

    b. AME, Inc. offered to purchase the Equipment for $8,400 plus the $2,000 for legal fees and costs associated with the sale efforts.

    c. Black Mountain Manufacturing, LLC has offered to purchase the Equipment for $10,000 plus the $2,000 for legal fees and costs associated with the sale efforts.

Collectively referred to as the "Potential Bidders."

## PROPOSED AUCTION PROCEDURES

5. Given the competing interest in the Equipment, the Debtor believes the most efficient means to maximize the value of the Equipment is to hold an auction with those Potential Bidders who are interested in an auction procedure.[1]

6. Given apparent value of the Equipment, the Debtor proposes the following auction procedures in an effort to maintain costs in proportion to the value of the Equipment:

   a. The Debtor will provide a conference call line for those parties interested in participating in the auction and those creditors interested in listing to the auction.

   b. The auction will be conducted at a mutually accepted date and time to the Potential Bidders and the Debtor, but not later than 30 days from an order approving this Motion. If the parties cannot agree on a date and time, then the Debtor shall select the date and time.

   c. At the commencement of the auction, the Debtor shall announce which bid listed above is the starting bid.

   d. Any subsequent bid shall increase the consideration received by $500.

   e. The Debtor shall within one business day select the highest and best bid from the auction.

   f. The winning bidder shall within three business days execute an agreement in substantially the form attached hereto as Exhibit A to purchase the Equipment, failing which the next highest bid shall be deemed the highest bid and shall have three business days to execute the appropriate agreement.

   g. The Debtor shall file a notice of auction results attaching the executed agreement, which shall be deemed approved by this Court and the Debtor may proceed to a closing.

---

[1] After speaking with the Potential Bidders, AME and Black Mountain are interested in participating in the auction and Mr. Rolle is not interested in participating in the auction at the current pricing.

7. The proposed auction procedures provide a cost efficient means of realizing the highest and best return for the Equipment.

## BASIS FOR SALE OF EQUIPMENT

8. Cause exists for authorizing the sale of the Equipement.

9. The Equipment is encumbered by the following secured claims:

   a. Colorado Lending Source; and

   b. TBK Bank.

10. Section 363(b) of the Bankruptcy Code provides authority for a trustee and, through the application of Bankruptcy Code section 1107(a), a debtor-in-possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

11. The Bankruptcy Court's power to authorize a sale under section 363(b) is to be exercised at the Court's discretion. In re WPRV-TV, Inc., 983 F.2d 336, 340 (1st Cir. 1993); New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983).

12. Courts have authorized a sale of a debtor's assets pursuant to section 363(b) of the Bankruptcy Code or in the absence of a reorganization plan where there is a "sound business purpose." In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); Titusville Country Club v. Penn Bank (In re Titusville Country Club), 128 B.R. 396 (Bankr. W.D.Pa. 1991); In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15 (Bankr. E.D.Pa. 1987). See also, Stephens Indus., Inc. v. McClune, 789 F.2d 386 (6th Cir. 1986); In re Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test in the context of a sale of assets under section 363(b) of the Bankruptcy Code).

13. It is in the best interests of the Debtor, its estate and its creditors to sell the Equipment as soon as possible as it will reduce the secured claims and the costs and expenses associated with the Equipment.

14. Courts have also required that the sale price be fair and reasonable and that the sale be the result of good-faith negotiations with the buyer. In re Abbotts Dairies of Pa., 788 F.2d 143, 147-50 (3rd Cir. 1986); In re Tempo Technology Corp., 202 B.R. 363, 367 (D. Del. 1996), aff'd sub nom. Diamond Abrasives Corp. v. Temtechco, Inc. (In re Temtechco, Inc.), 141 F.3d 1155 (3d Cir. 1998); In re Industrial Valley, 77 B.R. at 22; In re Stroud Ford, Inc., 163 B.R. 730 (Bankr. M.D. Pa. 1983); See also In re Ewell, 958 F.2d 276 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to section 363 of the Bankruptcy Code because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code).

15. While the Bankruptcy Code does not define "good faith," courts have held that for purposes of section 363(m), a "good faith purchaser" is one who buys "in good faith" and "for value" and that lack of good faith is shown by fraud, collusion, or an attempt to take grossly unfair advantage of other bidders. In re Abbots Diaries of PA., 788 F.2d at 147; In re Tempo Technology Corp., 202 B.R. at 367.

16. Except for Mr. Rolle, each Potential Bidder is an entity unrelated to the Debtor. The purchase price will be determined by an open auction procedure, providing for the highest and best return for the Equipment through an arm's process.

17. The Debtor requests authorization to sell the Equipment free and clear of liens, claims and encumbrances and other interests. Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

18. The Debtor believes it can obtain the consent of any valid lien holders.

19. To the extent it cannot, all lienholders could be compelled to accept a money satisfaction of their interests, thereby satisfying § 363(f)(5) of the Bankruptcy Code. See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D.Mo. 1997); In re Grand Slam U.S.A., Inc., 178 B.R. 460, 463-64 (E.D. Mich. 1995); WPRY-TV, Inc., 143 B.R. at 321. Courts considering this issue have held that the "cramdown" provision under the Bankruptcy Code constitutes such a "legal or equitable proceeding" and permits a sale free and clear pursuant to section 363(f)(5). See, e.g., Grand Slam U.S.A., Inc., 178 B.R. at 464; Scherer v. Federal National Mortgage Association (In re Terrace Chalet Apartments), 159 B.R. 821, 829 (N.D. Ill. 1993); In re Healthco Int'l, Inc., 174 B.R. 174, 176-77 (Bankr. D.Mass. 1994).

*Payment of Secured Claims and Closing Costs*

20. The sale proceeds will be used to satisfy all sale and closing cost, including all legal fees, and then liens, claims and encumbrances upon the Equipment in the order of their priority to the extent proceeds exist.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, a proposed form is filed herewith, (a) approving the proposed auction procedures; (b) authoring the Debtor to sell the Equipment to highest and best bidder; free and clear of liens, claims and encumbrances; (c) authorizing all closing costs to be paid from proceeds of the sale, including the legal fees for preparing and prosecuting this Motion; (d) pay liens, claims and encumbrances upon the Equipment in the order of their priority to the extent proceeds exist and (e) and for such further and additional relief as to the Court may deem just and proper.

Dated: February 12, 2018

Respectfully submitted,

By: /s/ Aaron A. Garber
Aaron A. Garber #36099
**BUECHLER & GARBER, LLC**
999 18th Street, Suite 1230S
Denver, CO 80202
Telephone: (720) 381-0045
Telecopy: (720) 381-0382
Email: aaron@bandglawoffice.com

EXHIBIT A

**ASSET PURCHASE AGREEMENT**

This Asset Purchase Agreement ("Agreement") is effective as of the ___ day of March, 2018, by and between TD Manufacturing, LLC, a Colorado limited liability company ("Seller") whose address is 21662 CR 52 Greeley Colorado 80631 and _____ ("Buyer"), whose address is _____.

**RECITALS**

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, on the terms and subject to the conditions of this Agreement, those certain assets of Seller, as defined below, collectively the "Property," in exchange for the Purchase Price, as defined below.

WHEREAS Seller has filed is proceeding in a Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the District of Colorado, Case No. 17-14243, and any sale of the Property is subject to Bankruptcy Court approval.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows.

**The Property**

1. Property. Subject to the terms and conditions set forth in this Agreement, Seller agrees to sell, convey, transfer, assign and deliver to Buyer and Buyer agrees to purchase from Seller, a Quick tech TT42 multi- axis turn/mill center lathe system with Mitshubishi CNC control with all cutting tooling, collets, accessories and other tooling belonging to said machine as available at sellers shop and a J&L optical comparator with all tooling and accessories that belong with said comparator.

**PURCHASE PRICE**

2. Purchase Price. On the terms and subject to the conditions set forth in this Agreement, as full payment for the transfer of the Property from Seller to Buyer, Buyer shall pay Seller the amount of $_____ PLUS the $____ for fees and costs incurred by counsel for Seller related to the sale of the Property (the "Purchase Price").

3. Payment of Purchase Price. The Buyer shall pay the Purchase Price to Seller at the Closing, as described below.

## TERMS OF SALE

4. Condition of Property. The Property is being sold without any representation or warranty regarding its condition or value, including, but not limited to, representation of merchantability and/or fitness for any particular purpose, except as otherwise provided herein.

5. Warranty of Title: The Seller represents and warrants that it has good and marketable title to the Property, or shall have good and marketable title to the Property at Closing, and shall convey, sell, assign and transfer the Property to Buyer free and clear of any and all liens and encumbrances of any third parties.

6. Bankruptcy Court Approval: The term and conditions of this Agreement are subject to Bankruptcy Court approval.

## GENERAL CONTRACT TERMS

7. Seller represents and warrants as follows:

   a. Organization and Authority. Seller is duly organized, existing and in good standing. The execution and delivery of this Agreement and the consummation of this transaction thereby have been duly authorized, and no further corporate authorization is necessary on the part of Seller.

   b. No Conflict or Violation. The execution, delivery, and performance by Seller of this Agreement will not violate or conflict with any provisions of the Articles of Incorporation or other organizational documents of Seller, and will not violate any provision of law, or any order, judgment, or decree of any Court or other governmental agency applicable to Seller, or violate or result in a material breach of, or constitute (with notice or lapse of time or both) a material default under any loan agreement, mortgage, security agreement, indenture or other instrument to which Seller is a party or by which it is bound.

   c. Consents and Approvals. No consent, approval, or authorization of, or declaration, filing, or registration with, any governmental authority except for the Bankruptcy Court is required to be made or obtained by Seller in connection with the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated thereby.

   d. Litigation. There are no actions, causes of action, claims, suits, proceedings, orders, writs, injunctions, or decrees pending or, to Seller's best knowledge, threatened against Seller at law or in equity that seek to restrain or enjoin the consummation of the transactions contemplated by this Agreement or that could otherwise materially and adversely affect the ability of Seller to perform its obligations under this Agreement, except for the Bankruptcy Case.

8. Buyer represents and warrants as follows:

   a. <u>Organization and Authority.</u>  Buyer is duly organized, existing and in good standing.  The execution and delivery of this agreement and the consummation of this transaction thereby have been duly authorized, and no further corporate authorization is necessary on the part of Buyer.

   b. <u>No Conflict or Violation</u>.  The execution, delivery, and performance by Buyer of this Agreement will not violate or conflict with any provisions of the Articles of Organization, Operating Agreement or other organizational documents of Buyer, and will not violate any provision of law, or any order, judgment, or decree of any Court or other governmental agency applicable to Buyer, or violate or result in a material breach of, or constitute (with notice or lapse of time or both) a material default under any loan agreement, mortgage, security agreement, indenture or other instrument to which Buyer is a party or by which it is bound.

   c. <u>Consents and Approvals</u>.  No consent, approval, or authorization of, or declaration, filing, or registration with, any governmental authority is required to be made or obtained by Buyer in connection with the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated thereby, except such as will not have a material adverse effect on Buyer's ability to consummate the transactions contemplated by this Agreement.

   d. <u>Litigation</u>.  There are no actions, causes of action, claims, suits, proceedings, orders, writs, injunctions, or decrees pending or, to Buyer's best knowledge, threatened against Buyer at law or in equity that seek to restrain or enjoin the consummation of the transactions contemplated by this Agreement or that could otherwise materially and adversely affect the ability of Buyer to perform its obligations under this Agreement.

9. <u>Notices</u>.  Any notices sent hereunder shall be in writing and shall be delivered to the following individuals:

   a. SELLER:
   Luke Yockim
   TD Manufactering, LLC,
   21662 CR 52
   Greeley Colorado 80631
   Luke.yockim@t-dmanufacturing.com

    b.    with a copy to:

> Aaron Garber
> Buechler & Garber, LLC
> 999 18th Street, Suite 1230S
> Denver, CO 80202
> aaron@bandglawoffice.com

    c.    BUYER:

> AME, Inc.
> 5770 Clarkson St.
> Denver, CO 80401

## THE CLOSING

10. <u>Closing Date.</u> The Closing shall occur 3 business days after a final nonappealable order is entered approving this Agreement; to occur at Buechler & Garber, LLC, 999 18th Street, Suite 1230S, Denver, CO 80202 or such other location as agreed to by the parties.

11. <u>Closing Activity.</u> At the Closing, all of the transactions provided for in this Agreement shall be consummated on a substantially concurrent basis, except to the extent such transactions specifically contemplate a later consummation date.

12. <u>Closing Deliveries.</u> At the Closing, the Parties shall deliver the following:

    a. <u>Seller's Deliveries at Closing.</u> At the Closing, Seller shall deliver (or cause to be delivered) to Buyer the following:

        i. the duly executed Seller's Bill of Sale to convey the Property in a form reasonably satisfactory to Buyer; and

        ii. the duly executed Seller's Assignments or other instruments necessary to convey Property to the extent not otherwise conveyed by Bill of Sale.

    b. <u>Buyer's Deliveries at Closing.</u> At Closing, Buyer shall deliver (or cause to be delivered) to Seller the following:

        i. The Purchase Price in certified funds;

        ii. any such other documents as may be reasonably required to close this transaction.

## **MISCELLANEOUS**

13. Further Assurances: Each Party to this Agreement hereby agrees to execute and deliver such other or additional documents as may be reasonably requested by another Party to fully effectuate the terms of this Agreement.

14. Amendment: This Agreement may not be altered, amended, or modified in any respect, except in writing duly executed by the parties.

15. Binding Effect of Agreement: This Agreement shall inure to the benefit of, and be binding upon, the respective agents, predecessors, successors, and assigns of the parties.

16. Governing Law: This Agreement shall be governed by and construed in accordance with the law and rules applicable in the State of Colorado, without regard to its choice of law rules.

17. Forum Selection: Any action relating to, based upon, or arising from a breach of this Settlement Agreement shall be brought only in the United Stated Bankruptcy Court for the District of Colorado, which shall retain jurisdiction over the subject matter and parties for this purpose.

18. Prevailing Party Attorney's Fees. In the event any action is filed by any party to enforce this Agreement, the prevailing party shall be entitled to recover their reasonable attorney's fees and costs against the other party.

19. Authority: The undersigned represent and warrant that they have full power and authority to enter into this Agreement and to bind the parties for which they have executed this Agreement.

20. Review: The parties hereby affirm and acknowledge that they have read and reviewed this Agreement, and that they fully understand and appreciate the meaning of each of its terms and actions referred to herein.

21. Construction: This Agreement shall not be construed more strictly against one Party as compared to another, as the Parties consider that each has contributed materially and substantially to its preparation.

22. Facsimile/Email Signatures: This Agreement may be executed in counterparts with the same force and effect as though all signatures appeared on one original document. Facsimile and email signatures are binding and enforceable as if they were originals.

23. Specific Enforcement: In addition to all other available remedies, this Agreement shall be specifically enforceable by any party, and in the event of the failure of any party or parties to comply with the terms of this Agreement, equitable and/or legal relief may be sought by the party to the defaulting or breaching party.

24. <u>Costs:</u> Each party to this Agreement shall bear his, her and/or its own attorney's fees and costs in the above-captioned matters.

25. <u>Paragraph Headings</u>. The Section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

26. <u>Effect of Closing</u>. None of the representations and warranties of the parties contained in this Agreement, or in any instrument, certificate or other writing provided for in it, shall survive the Closing.

27. <u>Entire Agreement</u>. This Agreement, together with the schedules, exhibits and other documents to be delivered pursuant hereto, constitutes the entire agreement among the parties hereto and there are no agreements, representations or warranties which are not set forth herein. All prior negotiations, agreements and understandings are superseded hereby.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the day and year first above written.

**SELLER**                                    **BUYER**

_____           _____

By:                                          By:

Its:                                         Its: